Opinion oivehe Corner, by
Judge Mills.
THIS was a moflbn made to compel the clerk ofthe Fayette circuit to ifsué executions offieri facias on two replevin bonds tak&p on judgments in Fayette, directed to the sheriff of Vwjoodford county. A memorandum was made, first directing the clerk thus to issue ..them, which the clerk refused to obey. The court then, on. motion, directed thém to issue as prayed. The security in the bonds resided in Woodford, the principals in the county of Faye|:e. Executions were first directed to Fayette, but not before one of the defendants had given notice to iss'uá the executions to Greenup county, and had filed an affidavit that he had. lands there, on which they might be levied. The plaintiffs in the executions then cliangejd the order, and issued two exeat- *29 of copias,fy$.fai^faciendum^i¿f¡^¡¡hj Thpse was then ^’nabtioh to-diVecítlie cí^feto¿|ssl'!e..eS%,u-tión.s oifidffacias- to Fayette, whi!c^^*ofewas Svef-riiled. Then, at a subsequent terfti^®afñe-jiemo|ioi) of this , , ,
Filing an davit jndgiv-TS”c'tic° un-.•'assembly, on* ly protects ¿¿btorhí thé dfonty to ryWfih the di" ;°itafo fords ilo pro-tootidn to i®F°pnrLn_ ]:
solcr'alTthp8' "personal es- & slaves ^county execution is directed, if affidavit has „“™co given oflandsin an-county, be
But it-is only bet'''cf11, , that the law-gives.the de-^je tpan. ;t ciocI authorise J2™1 J? i>rf-»|SnlTstitT giving up ro-mote an<" iul worthless mríá
'It was admitted, that no ybt issued to Gréenup, in these cases; andyit wa||pp[sted, that, was-the o'nly county to whi<?| the egjláújiions could go, add that they must be sent there, aBiffixejl on the lands, pointed out, before any otfier funcRcpuld,b^To,qched.
- Before, and for a-short period aftejfihe áqg||al;ion this state from the state of Virginia, 'j&mcfs were no,t subject *fo saje, under a 'fieri facias, yiJ|&s$hafge ,of judg-merits. "'•'Mis, however,- did not long.remained he.the ior ffie legislature, in 1792, a^ter.rpnied to ject them, and passed an act for that jyirppsq, ip whiclíj. as well as all subsequent amendatory hcts, is the follow-ln^hlauge.or section, which gives rise |o_ the present Controv^rsy: “If the party against .\yhsm Shall be entered, have several parcels lof lahd, which in qne and the same county, he, ordlis agent, may, l$y his writing, under his hand,* at any time before tlie-day of sale, require the sheriff or officer^ tawhbm,,a wnt-'of fíen Jadas upon the judgment, sj¿di be directed, to Piake the debt or damages and costs, ^jpuch of the said pprcels as • the owner or his agent shall thinlc proper; and if the parcels lie in different counties, the.clerk. shall and may, at the.like'request in writing, direct the Jlen'facias to the sheriff or other oilier of .any county, which the party or his agent, making oath or solemn amcmationlhat he hath land there, shall,particularly raehffóp, at any time before the writ sjiallne delivered j and -if the debt or damages -and costs Be',-rrii£&,of any other parcel of land, lying in any other equity tnan that mentioned in such written thpistiie of such other parcels, or of the lands, in sq,sh other, county, shall be void.” " *■
Under this section, it is contendeclJbfothe in error, that it is in the power of the'ofefendant in ese-cutipiktoeerid it to any county, however remote, to seize and'selkportions of land, however small and insignificant,"ána thereby screen from exfe'cu.i^qii .his chattels, slaves, iand body, as well- as liis 'iSif^-'in the-county *30 where he rqs.ide.fe;:. or, in other word§, that the legisla*?y *-hi|''p'r1oy4ioi); when they^siilDje'cVd lands, new-modelled all.otrtxexecution system,’ and so altered it, 38 to,iAake landy-of .any kind, quality of valúe, a covering, while it laslsftq, all otherdrinds of estate;" If this be the case; ithis provision, which has long existed in obr code, and has never beeri£:thus construed, until of late, is the most destructive besom to our system of executions, that has-gviSi been^ introduced; for it is hard to eonceive an individual so,Artless or indigent, as not to be able to procure a, title or claim of some kind, to land of some quality, many remote places, by which he could keeplthe plaintiff travelling even for yeajs, until he disposed, in.every county, of all these insignificant parcels, before.jie could touch upon the main 'fund, ob .the credit of which he contracted. We should pause, long, before we should put such a construction upon any legislative próvision, and should examin'd every reasonable construction besides, before we gave it this. Indeed, such a provision, as suggested at tbe-bar, might .be subject, to some constitutional objections^ which would be Ijafd tó'obviate.
t That such was 11st the intention of the legislatpre, and that this construction of it cannot be adopted, we think, follows frpm the following considerations: As said before, land was not previously subject to such ex-ecutionsybut collet only be extended by an elegit. This . was deemed by the legislature an evil, which they intended to remedy. In subjecting lands, it was competent for them to d'o it partially or entirely, unlimitedly or under restrictions and limitations. Some restrictions and limitations they did impose upon the power given; and it is plainly to be seen, that these restrictions were not intended to preserve aud protect all other property, by introducing land into the execution fund, but to save the domicil, and léave home as the last that should be disposed of, when lands were to be sold. For tnispur-pose, the sheriif is directed by the same act, “ to make-file debt,- damages or costs recovered, first of the goods, -and chattels, exclusive of slaves; and if there be-no, such goods and chattels, or not sufficient, found in his bailiwick, then of'the slaves; and if there be none, or not sufficient, found in his bailiwick, lastly,.of the landsr tenements and hereditaments', in possession, reversion or remainder.” Npw, it would be contravening the very *31 spirit of this orpviáion,^p sayj. thgT afteiytite, legislature 1 lmtf|>ut goVdsfand ch'áiteis in the froñí¿r¿mc slaves ih áeje?0, -WM all lmffisln thé'MQet^ey placed lands so directly in tlié roadj ánd inVerte^ the order sq far, as ’to screen the two first, until the lands were exPended. . ,, ... : *
,, It is a principle of the comihon lavv,-notwithstanding what is how contended |©r,. that, the dpbtor has no election, among orffietween his d^lrain'ahle^goods or estate, as to which shall be first takdh. ' Alij are subject, and. t’hejexepufion is an authority-.to the officer, to take ana make the money out of such as he can find,’ yvithput the direction of the debtor. And although, sheriffs,. in modern practice, may be in the habit of flaying' their hands'orilv upon such things as the d'ebtor points 'oufj, itls ejffl'ent that he does so at his peril, and subjects nimsfelf to’carnages,, if, while doing so, he .suffers .other j things to'escape him, out of which the money might made, arid fads to make it of what the debtor points'out., Wlftiavh been able to find no adjudications settling k different rule, and are not aware of any.legislative, pro-' vision which violates this principle of the common law. The nearest that comes to it, is a provision in the act we are now considering, which .provides, “ that lands shall nof be taken by execution for debt or damages, if nitre be slaves or personal property sufficient to pay the debt or damages,' unless the defendant shall request that his land shall be taken, instead of his other property; in which case, if he produce to the sheriff leVying" the. execution, sufficient vouchers, or '.make other proof sufficient to satisfy said sheriff that he has a righif to the land so tendered instead of the other property,', he shall receive it; and the defendant shall, njófébver, show the lands so tendered, to the sheriff, befp|,e his other property shall be released from execution';'' ’But if the .sheriff can find no other property to levy the*eiecution upon, or not sufficient to pay the samé, he irtáy levy the execution upon any lands of the dfeSlor, thdt he cam find in his county.”
In answer tp this section, we obáeryp, that it only ap---‘ plies to thq sheriff who has the execution and is proceeding with it, and does not compel'him to lay it down' untn'the sheriff of another county act?.' It is also so cautio'us’in its phraseology, that it supposes other property to be seized, and’directs it not to be released,-at *32 the election bf. tlie debtor, unlil^lié has. carefully siitis-fied the sheriff, both of the title a'hdtrue position of’the lands offered. And while it proceeds thus cautiously, it furnishes an argument, although it gives the ‘debtor a species of eleetio'ri between different species of his dis-trai.nable estate, that the. debtor had not' the right before, and shall'not have if then, except in cases where the sheriff should be able, beyond a- doubt, to' mate the money, if the election is followed; and it negatives the idea that lands were to be'made a cover to other estate, by construction only.
There is also a provision in the act of 1821, usually styled itie'property lazo, (1 Dig. L. K. 307,) which may be supposed to impeach this common law principle. This'provides, that “ the defendant or owner of said property shall have a right to direct that his' siaves, if any, or land, if any, shall first be exposed to sale.” Here, the case of a sheriff Slaving executed personal estate, slaves arid land, and ready to proceed with the sale, is pointed out. He is directed to sell, ’first the chattels,next the slaves, and lastly the land. But it vests t.he owner with a right to reverse this order, and sell the land first; and does not give the defendant or oWrier a right to release chattels or slaves, until the debt is paid.' Tiie principle, -then, is entire yet, unless it can be made appear that the section in question has destroyed it more fatally than any other provision.
Convinced by tírese considerations', that the legislature only intended to preserve the domicil to the last, by the restrictions, we shall proceed to consider wha't we deem the real effect of the act in question, after we have stated one other argument, which will be answered by the true construe! ion, and which may be used to favor the construction contended for.
it is asked, if, notwithstanding the affidavit'and notice, the party may issue his execution to other counties, and sell the personal chattels or slaves' of the debtor, before he touches the land pointed out in 'the notice, how will the debtor protect his larffi ai home*, in case'of a deficiency of other estate?' It is said, the sheriff has the authority, and may sell it without redress; and that the very change in the dii'ection of the execution, before it is delivered to the officer, must necessarily carry With it the right to remove 'it’to another county', lest it Might take the land where the other party directed it.
*33 To this we answer, that the filing of the notice and affidavit only saves the land in the county Jo whigh the plaintiff directs the execution, and not the other.estate/' The party may still proceed with' his execution,- as he first directed it, and exhaust the personal chattels and. slaves, if land is then the only fund there, he is bound not to touch it, until he has followed the notice,'and sold the land pointed out by the debtor. With, this, well comport the words of the act. which declares, “ that if the debt or damages and costs be made of any other parcel of land, lying in any other county than that mentioned in such written requisition, the sale of such other parcel, or of the lands in such other county” (but not of all the goods, chattels and slaves) “ shall be void.”
Upon the whole, then, we are of opinion that the party may proceed with his execution, to .any other county than that pointed out in the notice and affidavit, notwithstanding they have been filed in time, and ma proceed to make his demand out of the goods, chattels and slaves of the debtor,, and is only restrained, under the penalty of a void sale, from touching the lands where • his execution is, until he disposes of those in the notice mentioned; that the legislature, while laying lands liable, only gave the debtor a preference and election .in favor of his home, or.favorite spot,-and authorised him to choose between land and land, and not between his distant and worthless lands and all his chattels and slaves, elsewhere.
It follows, then, from this construction, that the?glain-tiffs were not bound, in this instance, to send the execution to Greenup, and that of course that was unavailing against sending the-mxecution to Woodford. It would seem to follow, that the county of Fayette was, the proper county to which they ought to have directed it first, m order that the property of the principals, land ex-'cépted, might be first taken. In this, however, they had been defeated. The clerk had refused, and the court had refused to compel him, to issue to that county. To go to Greenup, was what they were not bound to do, and it would be subjecting them to all the evils that have been pointed out.' To go to any still different county, might be wholly unavailing; for it is not shown,that there was either person or estate,elsewhere. The only resort, then, was the county of Woodford, as the .door to was shut a former decision. It *34 is undoubtedly proper to issue the execution where the debtor resides, and it may be advisable-to issue it to the county where the-principal is, before the security, who resides in another'county, as in this case, is disturbed; but whether the plaintiff is bound to dó so, isaquestioli we need not now decide; for the parties in this case had procured a decision shutting the execution from Fay-ette. And although that decision may not be a harto resorting ever to the county of Fayette again, yet it can do the defendants below no injustice, to hold them to the decision they have obtained, and to permit the execution to go to Woodford, where the residence of one of them is found.
The order of the court below is, therefore, affirmed with costs.